Caroline K. Simon, J.
This claim anises out of the permanent appropriation in fee and permanent easement takings of claimant’s land in connection with the construction of the SmithtownPort Jefferson S. H. No. 5232A in the County of Suffolk, pursuant to section 30 of the Highway Law. The fee takings are described as Map Nos. 94, 100 and 108, Parcel Nos. 113, 119 and 127, respectively; and the permanent easement takings are described as Map Nos. 122, 140 and 148, Parcel Nos. 146, 167, 175 and 176, respectively, the latter takings constituting acquisitions for excavations, embankments and slopes. The aforesaid maps were filed in the Suffolk County Clerk’s office on May 5, 1961. The court adopts the descriptions of the appropriated property as shown on the maps and descriptions filed in the Suffolk County Clerk’s office, copies of which are attached to the claim, and the same are incorporated herein by reference. Claimant filed his claim with the Clerk of the court and the Attorney-General on October 8,1962.
Claimant derived title to the subject property, which for reasons of convenience and clarity are hereby denominated Parcel Nos. 1, 2 and 3, respectively, by reason of a series of three deeds, the first of which deeds, relating to Parcel No. 1, was dated February 1, 1956 and was from' Louis B. Barnett, Herbert B. Smith and Marjorie B. Smith, as grantors, to the claimant herein. This deed was recorded in the Suffolk County *87 Clerk’s office on February 7,1956 in Liber 4066 of Deeds at page 593. The deed affecting Parcel No. 2 was dated December 22, 1955 and was from H. Percy Barnett and Florence K. Barnett, as grantors, to the claimant herein. This deed was recorded in the Suffolk County Clerk’s office on December 29, 1955 in Liber 4064 of Deeds at page 4018. The third deed, affecting Parcel No. 3, was dated November 10, 1955 and was from George Grariseher, as grantor, to the claimant herein. This deed was recorded in the Suffolk County Clerk’s office on January 23,1956 in Liber 4058 of Deeds at page 534.
Prior to the within takings the subject property comprised 23.434± acres and consisted of three noncontiguous irregular parcels of vacant land each of which parcels had uninterrupted access to and frontage upon the north side of New York State Route 25A opposite the intersection of that highway (known locally as North Country Road) and Nichols Road, the parcels being located in School District No. 2 of the Stony BrookSetauket area of the Town of Brookhaven, Suffolk County. The general area in which the parcels are situated is bounded on the south by Route 25A, and on the north and west by Thompson’s Hay Path, and on the east by Bennetts Road at its intersection with Route 25A.-
Both sides were in accord that for many years before the takings the general area at the intersections of the various local and State roads heretofore noted had been a general neighborhood business area, consisting in the main of service establishments such as gasoline stations, automobile repair shops, art studios, antique shops, grocery stores and similar small businesses.
There was further agreement among the parties that at the time of defendant’s appropriations for highway purposes claimant’s Parcel No. 1 was zoned Business J for a distance of 200 feet out of a total frontage of 413.24± feet on Route 25A for a uniform depth of 100 feet, and that the remainder of 11.486± acres of total acreage was zoned B Residence; that claimant’s Parcel No. 2 consisting of 3.974± acres, was zoned B Residence in its entirety and- had a frontage of 206± feet on Route 25A. Although the State’s appraiser was of the opinion that the entire 207± feet of frontage on Route 25A of claimant’s Parcel No. 3, consisting of 7.974± acres, was zoned B Residence, the court finds that some two-thirds of the frontage, or approximately 135 to 150 feet, was in fact zoned Business J, based on the ample proof submitted by claimant’s highly qualified land surveyor and planning and zoning expert. The State’s appraiser did not *88 personally confer with a representative of the Town of Brook-haven regarding the zoning of claimant’s property, and his opinion on that point is without factual support in the record.
It was established that the entire frontage on the south side of Route 25A opposite claimant’s property had been zoned Business J prior to the instant takings, and that in June of 1955, upon application to the Town Board of Brookhaven, 350 feet of frontage on the north side of Route 25A; in the vicinity of claimant’s Parcel No. 3, had been rezoned for business use.
Claimant’s uncontradicted proof established that as early as 1957 a local philanthropist acquired substantial tracts of land in the immediate vicinity of the subject property for the avowed purpose of giving such tracts to the State for the establishment of a large State University campus to be located in the Stony Brook section of Suffolk County, and that the purpose of the within takings was to widen Route 25A and improve the same to create a redesigned, realigned intersection in conjunction with the improvement by Suffolk County of Nichols Road, “ especially made for access to the college The lands mentioned were deeded to the State and the State University campus at Stony Brook now is functioning with many buildings completed and in operation and others in the planning and initial construction state. That claimant’s parcels were the closest in proximity to the State University with access at general level grade to Route 25A and its intersection with Nichols Road at the time of the instant takings, and that the University was in the planning stage in May of 1961, is also an undenied fact. Claimant’s experts were in accord that the presence of the University created unprecedented demand for commercial frontage along Route 25A and that in their opinion there was a reasonable probability that claimant’s existing frontage would be rezoned for commercial use to a uniform depth of 200 feet to reflect the aforesaid economic development of the area and reasonable market demand for such frontage generated by the accelerated development of housing, the University and business.
The court, upon review of the expert testimony presented on this point by both sides, the numerous photographs and exhibits introduced to depict the conditions created by the defendant’s appropriations, and its own statutory view of the subject property and the surrounding area and the comparable sales introduced by both sides, finds that the highest and best use to which the subject property could be put prior to the within takings was for commercial development of claimant’s entire frontage along Route 25A to a uniform depth of 200 feet and residential development of claimant’s remaining acreage.
*89 It is settled that “ an owner whose property is acquired by condemnation is not limited in compensation to the nse to which be made of his property but is entitled to receive its market value ‘based on the most advantageous use’”. (St. Agnes Cemetery v. State of New York, 3 N Y 2d 37, 41.) In that connection the trier of fact may properly consider proof that there was a reasonable probability that the existing zoning of his property would have been changed to reflect changes in economic condition of the surrounding area. (Genesee Val. Union Trust Co. v. State of New York, 9 N Y 2d 795; Masten v. State of New York, 9 N Y 2d 796.) Moreover, once such proof has been presented by a condemnce, the burden shifts to the defendant to show that the subject property could not have been so rezoned. (Brubaker v. State of New York, 17 A D 2d 519, mot. for lv. to app. den., 13 N Y 2d 598.) No such proof was presented.
The court further finds that the highest and best use to which the subject property could be put subsequent to the instant takings was for residential development and that by reason of the instant takings claimant had been deprived of the potential commercial development of the frontage along Route 25A as heretofore noted.
The instant takings appropriated 335 feet of claimant’s existing commercial frontage and 491 feet of claimant’s residential frontage, all of claimant’s frontage situated in Parcel Nos. 1 and 2 and 11.43± feet of frontage situated in Parcel No. 3. 0.733 acre of permanent easements along the north side of Route 25A were also acquired for the purposes heretofore recited.
With regard to the initial question of the extent of the conceded direct damage caused by the within takings, the court has taken into consideration claimant’s expert testimony with respect to a rising trend in land values created by the planned location of the State University campus at Stony Brook and the purpose for which the instant takings were acquired, namely, the widening and improvement of Route 25A which provides direct access to the new State University campus. Clear authority for the consideration of such proof is found in Albany Country Club v. State of New York (19 A D 2d 199, affd. without opinion 13 N Y 2d 1085) and Mattydale Shopping Center v. State of New York (303 N. Y. 974). Based on the foregoing proof and the comparable sales introduced by both sides, which were identical with the exception of State’s Sale No. Gr, and adjusting such sales where necessary, the per acre residential land value based thereon, of $4,000 in claimant’s appraisal and $3,900 in defendant’s appraisal, the court adopts claimant’s per acre value of $4,000 in regard to claimant’s residential acreage.
*90 With respect to claimant’s commercial frontage, the court rejects defendant’s opinion that the existing commercial frontage should be valued on a square foot basis at 45 cents per square foot and that there was no reasonable probability of a zoning variance to convert existing residential frontage to commercial frontage and to increase the depth of the entire frontage so converted to a uniform depth of 200 feet. The opinions offered by claimant’s experts negate defendant’s expert’s opinion and rest on abundant factual proof missing from defendant’s appraisal although the State’s appraisal was by an experienced and competent appraiser. The court further adopts the claimant’s expert opinion that on the appropriation date claimant’s commercial frontage was worth $150 per front foot and should include reasonable rezoning of all existing frontage to a uniform depth of 200 feet.
Turning to the more serious question raised by the variance in approach and wide discrepancy in proof introduced by the parties in regard to the extent and measure of consequential damages attributable to the within takings, the court agrees with claimant’s expert opinion that claimant’s valuable commercial frontage has been lost, that claimant’s remaining 22.175± acres of land have been virtually landlocked, and that claimant has been deprived of suitable access to his remaining land, all of which justifies an award of substantial consequential damages. The photographs introduced to depict the topography of claimant’s original parcels and the condition of claimant’s remaining acreage, as viewed by the court with representatives of both parties, together with the topographical surveys concerning the nature and extent of the increase in slope between defendant’s highway right of way and claimant’s remaining property created by the acquisition of permanent easements herein, and claimant’s credible and competent expert testimony in relation thereto, establish not only loss of suitable access but that extensive removal of State-owned fill would be essential. The minimum cost of such removal of fill was established to be $21,768 and this is a preliminary necessity to “ cure ” the con-" dition and to restore access to level highway grade. The court is in accord with claimant’s posture that the traditional “ cost to cure ” theory utilized to fix the maximum limit of consequential damages in normal permanent easement acquisitions should not be applied to the case at bar, since such an approach must necessarily be predicated on a clear and unequivocal stipulation by defendant’s Department of Public Works that not only access to the highway as improved will be guaranteed in perpetuity but also that this agency will approve the removal of the *91 fill required to restore access. (Wolfe v. State of New York, 23 A D 2d 136.)
In accordance with the mandate issued by the Appellate Division to permit submission of such an appropriate stipulation by defendant contained in Wolfe (supra), the court afforded defendant an opportunity to comply so as to enable a realistic and fair determination of consequential damages to be made. In response to the court’s direction, the defendant submitted a post-trial representation dated July 8, 1965 over the signature of Austin M. Sarr, Metropolitan District Engineer of defendant’s Department of Public Works, which provided that said department ‘1 upon proper application made by claimant or his successor in interest, will issue a lawful permit for the construction of roads or driveways, including removal of fill from within the easement areas covered by Map 122, Parcel 146; Map 140, Parcel 167; and Map 148, Parcels 175 and 176, provided such construction will not interfere with the purpose for which the easements were taken. No cost in regard to any such construction aforesaid will be borne by the State of New York.”
The court finds that the express reservation contained in the aforesaid representation, underlined for clarity, does not meet the minimum requirements of the stipulation heretofore mandated by the Appellate Division in Wolfe v. State of New York (supra). There is lacking any provision that the rights granted Avould be “ authorized and approved, Avith a right in perpetuity to the use thereof, or other suitable agreement” (23 A D 2d 136, 139). Therefore claimant is entitled to an aAvard for consequential damages not limited to the “ cost to cure ” but based upon the proof introduced as to the diminished value of claimant’s remaining property by reason of the denial of access. This, the court computed to be the sum of $64,800.60.
An appropriate motion made to conform claimant’s original damage claim in the sum of $140,467 to the proof and thus increase the original ad damnum clause to $183,372.60 Avas granted by the court.
In regard to defendant’s expert’s opinion that the Avithin takings created no element of consequential damages properly compensable in this case, the court finds that statement entitled to no weight. The extensive proof offered by claimant’s experts on this precise point, and the court’s vieAv of the property and the admissions of defendant’s project engineer that he had computed differences in elevation between the right of way line and claimant’s remaining property line, rather than differences in slope created by the State’s appropriations and that the differences in scale between Ms survey and that prepared by claim *92 ant’s land surveyor would not produce any difference in the percentage of slope support claimant’s position. The differences in slope were uncontroverted and established to be initially 12% and presently 31%%, an increase of almost 20%, shown by proof to be too steep for suitable access.
Defendant is not aided by the testimony of this witness that roads 50 feet in width could be constructed by claimant into Parcel Nos. 1, 2 and 3 at certain stations subsequent to the takings. This testimony ignores the fact that claimant’s commercial frontage required unimpeded access at level grade to achieve its highest and best potential use, and that the steepness of easement slopes heretofore noted destroyed such use. Were residential use the only use to which the property could be put, then conceivably the three potential access roads might be said to provide adequate access, assuming, of course, that the State would permit the construction of such access roads and their use over a reasonably permanent time period.
Based on the foregoing determinations the court finds that the fair and reasonable market value of claimant’s property prior to the within takings was $202,474; that the fair and reasonable market value of claimant’s property subsequent to the within takings was $19,101.40; and that the amount by which claimant has been damaged is $183,372.60, of which amount $118,572 represents direct damages and $64,800.60 represents consequential damages to claimant’s remaining land, for which damages claimant is entitled to an award with appropriate interest.
In the interests of brevity, no attempt has been made to break down the before and after values and damage awards for each parcel, since these computations are set forth with preciseness and clarity in claimant’s proposed findings submitted to the court, which findings are incorporated herein by reference, and are also set forth in claimant’s appraisal report, introduced into evidence as claimant’s Exhibit 29.
The court awards claimant the sum of $183,372.60 for all damages directly and consequentially attributable to the within takings with interest thereon from May 5, 1961 to November 5, 1.961 and from October 8, 1962 to the date of entry of judgment herein.
The award to claimant herein is exclusive of the claims, if any, of persons other than owners of the appropriated property, their tenants, mortgagees and lienors having ' any right or interest in any stream, lake, drainage and irrigation ditch or channel, street, road, highway, or public or private right of way or the bed thereof within the limits of the appropriated property or contiguous thereto; and is exclusive also of claims, if *93 any, for the value of or damage to easements and appurtenant facilities for the construction, operation and maintenance of publicly owned or public service electric, telephone, telegraph, pipe, water, sewer and railroad lines.